NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2889
_____

WELCH FOODS INC.,
a cooperative doing business as WELCH'S
Appellant

v.

GENERAL TEAMSTERS, LOCAL UNION NO. 397
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:19-cv-00322)
U.S. District Judge:  Honorable Susan Paradise Baxter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 8, 2025
_____

Before: SHWARTZ, FREEMAN, and RENDELL <u>Circuit Judges</u>.

(Filed:  July 11, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Appellant Welch Foods, Inc. ("Welch's"), appeals the District Court's order that left intact an arbitration award in favor of Appellee General Teamsters Local 397 (the "Union"). Because the award violates the public policy against sexual harassment in the workplace, we will reverse the District Court's order and remand for further proceedings.

I

Pat Woodward, a Union member and Welch's employee, had a verbal altercation with another employee, Terri Lawson, in which both he and Lawson used foul language. For his part, Woodward used gender-based slurs. Welch's initially terminated both employees, but later reduced Lawson's punishment to a ten-day suspension. In Woodward's termination papers, Welch's asserted that he had "violate[d] Welch's Rules of Conduct" by "creating a hostile work environment" through his use of "threatening and intimidating behavior and language" with Lawson. JA 146.[1] The Union filed a grievance on his behalf pursuant to the collective bargaining agreement (the "CBA"), which was denied. The Union then submitted the issue to an arbitrator, requesting Woodward's reinstatement with back pay.[2]

---

[1] Welch's noted that, specifically, Woodward engaged in "[d]isrespectful language that was abusive, sexually explicit and derogatory towards another co-worker and women in general" as well as "behavior which violates standards of common sense, common dignity or is in reckless disregard of [his] fellow employees or [his] company." JA 146. Welch's had also previously disciplined Woodward after he went "on an extended rant" about an unspecified subject, and Welch's informed him it would not tolerate such conduct in the future. JA 165.

[2] The CBA provides in relevant part:

2

The Arbitrator heard testimony from Woodward, Lawson, a witness to the altercation, and other employees.  The Arbitrator's decision reviewed the testimony adduced,[3] the parties' arguments, and relevant CBA provisions.  The decision made very few factual findings.  It noted that (1) Lawson "instigated the argument," and (2) Woodward and Lawson both raised their voices and used "inappropriate" and "foul" language.  JA 164–65.[4]  From this, the Arbitrator concluded that Welch's had "just cause" to discipline Woodward, but that a ten-day suspension, rather than termination, was warranted.  JA 167.

Welch's filed an action to vacate the arbitration award, asserting that it violated the public policy against sexual harassment in the workplace.  Both parties moved for

[D]irection of the work force [], including the right to . . . discipline, and discharge employees . . . are the function and responsibility of management . . . . The Company may discharge an employee for any reason which, in its judgment, is in the interests of the Company except Union activity. The discharge of an employee is subject to review in accordance with the [CBA's "Grievance and Arbitration" provisions.] . . . . In the event of [an] arbitration regarding the discharge of an employee, the arbitrator shall have the power in accordance with the circumstances to direct reinstatement or no reinstatement, with or without back pay, in whole or in part . . . . The decision or award of the arbitrator shall be . . . final and conclusive upon the parties.

Dist. Ct. Dkt. No. 1-3 at 6, 25.

[3] Witnesses testified that Woodward had shouted at Lawson, cursed, used gendered profanities, indicated that only men were "going anywhere in this Company," and demanded that Lawson not badmouth him to others.  JA 152.

Woodward testified that Lawson approached him in the breakroom and "got close to him," and that he felt he had to defend himself.  JA 156.  He admitted to using gendered profanities in the context of asking Lawson why she had been telling people that he was biased against women and that he was sympathetic to management.  He denied that he had used certain slurs or made certain profane gestures.

All agreed that profanity was frequently used at the plant.

[4] The Arbitrator did not report her credibility determinations but did note that the eyewitness had offered inconsistent statements.

3

summary judgment. The District Court found that, because the Arbitrator had not made findings of fact regarding "the specific conduct of which Woodward was accused," it was unable to determine whether he had engaged in sexual harassment. JA 119. As a result, it dismissed the motions without prejudice and remanded to the Arbitrator for her to specify (1) "her factual findings regarding the sexual harassment allegations against [Woodward]," and (2) if she "found merit to those allegations, her consideration of the 'pertinent public policy' against sexual harassment in the workplace." JA 126.

In response, the Arbitrator issued a clarification stating that she "based her findings on the reasons [Welch's gave for terminating Woodward], which did not include a charge of sexual harassment." JA 132. She further stated that she determined that "the discipline imposed on [Woodward]" was "too harsh" given that (1) Woodward was not the aggressor, (2) both he and Lawson "raised [their] voice[s] and . . . used inappropriate language," and (3) Welch's reduced Lawson's discipline (but not Woodward's) from termination to a 10-day suspension. JA 132–33. Finally, the Arbitrator reiterated that she "did not find [Woodward] engaged in sexual harassment and the Company did not contend in his termination letter that he was involved in sexual harassment." JA 133. The Arbitrator did not address the "pertinent public policy" considerations regarding sexual harassment because she did not make a finding that any had occurred. JA 133.[5]

---

[5] The Arbitrator's delay in issuing this clarified ruling does not mandate vacatur. Cf. 29 C.F.R. § 1404.14(a) (setting forth the timing for arbitrators' awards but clarifying that failure to abide by this timeline "will not invalidate the process or award").

The parties again moved for summary judgment, and this time the District Court granted summary judgment to Woodward and declined to vacate the Arbitrator's award. The Court determined that the Arbitrator's supplemental ruling clarified that Woodward's conduct, "while offensive and inappropriate," JA 19, "did not rise to the level of sexual harassment," and that this conclusion was not "plainly inconsistent with [the Arbitrator's] factual findings," JA 17. Therefore, "[b]ecause the Arbitrator's clarification of her award disavow[ed] any finding that [Woodward] engaged in sexual harassment," the Court concluded that the reinstatement and suspension award did not violate public policy. JA 11.

Welch's appeals.

## II[6]

Courts have "very limited power to review a labor arbitration award by an arbitrator appointed pursuant to a [CBA]." Stroehmann Bakeries, Inc. v. Loc. 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1441 (3d Cir. 1992). When parties have agreed to arbitrate their dispute, courts must defer to "the arbitrator's view of the facts and of the meaning of the contract," as well as her "honest judgment" as to the appropriate remedy for a contractual breach. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37–38 (1987). "[A]s long as the arbitrator's award is drawn from the essence of the

---

[6] The District Court had jurisdiction under 29 U.S.C. § 185 and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review over this appeal from an order resolving cross-motions for summary judgment." Stroehmann Bakeries, Inc. v. Loc. 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1440 (3d Cir. 1992).

[CBA], a court may not vacate it even if the court finds the basis for it to be ambiguous or disagrees with its [legal] conclusions." Stroehmann, 969 F.2d at 1441.

A court may, however, vacate an award where the arbitrator has construed a CBA in way that "explicitly conflict[s] with [a] well-defined, dominant public policy." Id. There is a well-defined, dominant public policy against sexual harassment in the workplace that "favor[s] voluntary employer prevention and application of sanctions against sexual harassment." Id. at 1441–42 (citing Title VII of the Civil Rights Act of 1964 and regulations promulgated thereunder).[7] In Stroehmann, we clarified that an arbitrator's decision conflicts with the public policy against sexual harassment where it reinstates someone who has been accused of sexual harassment "without a determination that the harassment did not occur." Id. at 1442.[8]

We read the Arbitrator's clarification to say that she did not make a finding as to sexual harassment because Woodward was not charged with sexual harassment. But this is not correct. The charges described in Woodward's termination letter (i.e., creation of a hostile work environment and use of "[d]isrespectful language that was abusive, sexually explicit and derogatory towards another co-worker and women in general," JA 43), if

---

[7] The concepts of sexual harassment and hostile work environment are closely related, as a hostile work environment may be created through sexual harassment. See e.g., Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).

[8] Stroehmann also cited with approval an out-of-circuit case which held that reinstatement does not violate public policy where the arbitration award finds that the accused did in fact commit sexual harassment, and also finds that lesser discipline is adequate to ensure that the grievant will not commit sexual harassment in the future. 969 F.2d at 1443 n.4 (citing Chrysler Motors Corp. v. Allied Indus. Workers, 959 F.2d 685 (7th Cir. 1992)).

proven, amounts to sexual harassment as a matter of law. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66–68 (1986) (setting forth pleading standard for "'hostile environment' theory of sexual harassment"); cf. 29 C.F.R. § 1604.11(a)(3) ("Unwelcome . . . verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of . . . creating an intimidating, hostile, or offensive working environment.").

The Arbitrator's award did not make a finding as to whether Woodward had sexually harassed Lawson, as Stroehmann requires. Her reduction of Woodward's punishment was based on her view that Lawson and Woodward should receive the same level of discipline, given that Lawson instigated the incident and that both Lawson and Woodward both used inappropriate and foul language. When asked to specify her fact-finding regarding the sexual harassment allegations against Woodward, the Arbitrator disavowed any finding as to whether sexual harassment occurred. Her clarification stated that she "did not find sexual harassment to be one of the charges the Company outlined against [Woodward]. It was not included in the discharge letter provided to [Woodward]." JA 132. She later reiterated that she "did not find [Woodward] engaged in sexual harassment and the Company did not contend in his termination letter that he was involved in sexual harassment." JA 133. Viewed in context, this was not a finding that Woodward did not engage in sexual harassment. Instead, these statements show that the Arbitrator did not think it necessary to make a factual finding regarding Woodward's alleged sexual harassment, as the term "sexual harassment" was not used in the termination letter.

7

Accordingly, just as in <u>Stroehmann</u>, leaving Woodward's reinstatement in place could "allow a person who may have committed sexual harassment to continue in the workplace without a determination of whether sexual harassment occurred" and would "undermine[] [Welch's] ability to fulfill its obligation to prevent and sanction sexual harassment in the workplace." 969 F.2d at 1442.[9] Because it lacks a finding that Woodward did not commit the sexual harassment of which he was accused, the Arbitrator's decision violated public policy. Accordingly, we will reverse the District Court's order granting the Union's motion for summary judgment and denying Welch's motion for summary judgment. We will remand with instructions to vacate the Arbitrator's award and remand for further proceedings. The District Court shall once again request that the Arbitrator specify her factual findings and determine whether Woodward created a hostile work environment by using language that was sexually explicit and derogatory towards women (i.e., committed sexual harassment, as alleged in his termination letter).[10] If the Arbitrator finds that Woodward did engage in sexual harassment, and nevertheless finds it appropriate to reinstate him, she should explain why

---

[9] Given these parallel concerns, it is immaterial that the arbitrator in <u>Stroehmann</u> expressly refused to find whether sexual harassment had occurred, whereas here, the Arbitrator arguably declined to make such a finding.

[10] It would also be helpful if the Arbitrator were to indicate whose testimony she credits as to what occurred. The absence of a credibility determination makes the task of a reviewing court more difficult.

lesser discipline is appropriate in light of the public policy against sexual harassment in the workplace.[11]

## III

For the foregoing reasons, we will reverse the District Court's order and remand for further proceedings not inconsistent with this opinion.

---

[11] See, e.g., Commc'n Workers of Am. v. Se. Elec. Coop. of Durant, Okla., 882 F.2d 467, 469–70 (10th Cir. 1989) (reinstatement of employee accused of sexual harassment did not violate public policy where arbitrator noted "no prior conduct involving a sexual offense" and a "penitent and apologetic attitude"); Chrysler Motors Corp., 959 F.2d at 686–87 (reinstatement decision did not violate public policy where arbitrator found employee committed sexual harassment, but that "severe discipline short of discharge would be adequate to deter him from further misconduct").